OPINION *Page 2 
{¶ 1} Defendant-Appellant, Paul Mossburg, appeals the judgment of the Van Wert County Court of Common Pleas convicting him of one count of grand theft of a motor vehicle. On appeal, Mossburg asserts that the trial court erred in failing to grant his Crim.R. 29 motion for a judgment of acquittal; that his conviction was against the manifest weight of the evidence; and, that the trial court erred in allowing the State to call an undisclosed rebuttal witness to testify without allowing him a continuance to prepare. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In February 2006, the Van Wert County Grand Jury indicted Mossburg on one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1),(B)(5), a felony of the fourth degree.
 {¶ 3} In March 2006, Mossburg entered a plea of not guilty.
 {¶ 4} In May 2006, a jury trial was held, during which the following testimony was presented.
 {¶ 5} Officer James Haggerty, a Van Wert City Police Officer, testified that while he was on duty on September 9, 2005 at approximately 8:30 p.m., he mediated a dispute between Mossburg and the manager of the Sunset Inn in Van Wert, Ohio; that after the manager of the Sunset Inn asked Mossburg to leave, he advised Mossburg to leave; that Mossburg was headed westbound on West Main *Page 3 
Street, when he left the Sunset Inn; that he later saw Mossburg at a Clarke Oil gas station on West Main Street; and, that he did not see Mossburg around the Brookside Dairy[1] on September 9, 2005. On cross-examination, Officer Haggerty indicated that the Clarke Oil gas station was on the 300 block of West Main Street while Brookside Dairy was on the 1300 block of West Main Street and that when he came back to the Clarke Station later in his shift, Mossburg had left.
 {¶ 6} Roger LeRoy Shaffer, who delivered milk for Brookside Dairy, testified that Brookside Dairy had two delivery trucks, which were parked outside of Brookside Dairy; that on September 9, 2005, one of the delivery trucks was no longer parked outside of the business; that the absence of the truck did not cause him concern, because the delivery trucks were often used for personal use; and, that when he came to work on the night of September 11, 2005, the delivery truck was still missing, so he called Roger Welch, the owner of Brookside Dairy. Additionally, Shaffer indicated that the delivery trucks had two sets of keys, one set located inside the company's office and the other located inside the truck's glove compartment and that typically, the doors to the trucks were kept unlocked. Finally, Shaffer noted that he did not know Mossburg or give him permission to drive the delivery truck. *Page 4 
 {¶ 7} Roger Welch testified that he has run the Brookside Dairy for forty-five years; that he notified the Van Wert City Police Department after he determined that one of the delivery trucks might have been stolen; that the missing truck, which was infrequently used and titled to Brookside Dairy, was found in Huntington, Indiana; and, that he did not know Mossburg and did not give him permission to take the delivery truck.
 {¶ 8} On cross-examination, Welch indicated that Brookside Dairy employs four people; that two or three times a year, people use the delivery trucks to move furniture, for pancake breakfasts, or for other various matters; that he had a driver named Larry, who worked for him a few years prior, but never drove the delivery trucks; that Larry was approximately 55 years old, six feet tall with dark brown hair, and still lives in the area; and, that he also owned a 24-hour convenience store located next door to the Brookside Dairy, but that he could not expect anyone inside the store to hear the delivery truck being driven away.
 {¶ 9} Detective Michael Freeman of the Van Wert City Police Department testified that he has training as an evidence technician, which included the taking of fingerprints, and works closely with the Ohio Bureau of Criminal Identification and Investigation (hereinafter referred to as "BCI"); that on September 12, 2005, he was asked to assist with the return of a stolen vehicle in Huntington, Indiana; and, that he went with Welch and Officer Joe Bruns to Indiana to identify and to *Page 5 
process any evidence that may have been located in the vehicle. Detective Freeman continued that once they arrived at the body shop where the vehicle was located, Welch indicated, and the license plate information confirmed, that the vehicle was the one reported stolen from Brookside Dairy; that he checked the vehicle for damage and recovered the keys from someone at the body shop; that he opened the driver's side door of the vehicle with a handkerchief and Officer Bruns took photos of the vehicle; that a Pepsi bottle was found inside the vehicle, which was collected for the possibility of potential forensic evidence being on it; and, that he lifted fingerprints off the exterior of the driver's side window and vent window. Detective Freeman then indicated that the fingerprints on the driver's side window and vent window pointed down from the top of the glass toward the bottom of the glass; that he checked the steering wheel, the shift lever knob, and the mirrors of the vehicle, but was unable to locate any viable prints on them; that the Pepsi bottle located inside the vehicle was taken back to the police station, had fingerprints on it, and was sent to BCI to identify the fingerprints; and, that he also sent the fingerprints from the driver's side window and vent window to BCI. Detective Freeman continued that reviewing police radio logs in September 2005, he noticed that Officer Haggerty had had contact with Mossburg and obtained a fingerprint card of Mossburg's fingerprints. *Page 6 
 {¶ 10} On cross-examination, Detective Freeman indicated that he was unable to locate any latent fingerprints on the steering wheel or gear shift; that a travel brochure was also found in the vehicle and sent to BCI, which did not reveal any matching fingerprints to Mossburg's fingerprints; and, that fingerprints were not looked for on the stolen vehicle's keys.
 {¶ 11} Officer Joe Bruns, a Van Wert City Police Officer, testified that he went to Huntington, Indiana, to assist Detective Freeman with the investigation of a stolen vehicle from Brookside Dairy; that he took several pictures of the vehicle, which were admitted into evidence; and, that inside the vehicle, there was a Pepsi bottle, which was collected as evidence. On cross-examination, Officer Bruns indicated that the vehicle had been driven or towed to the location where he took the pictures of it and that he was unsure if fingerprints were taken from the gear shift, steering wheel, or mirrors.
 {¶ 12} Agent Todd Wharton, a forensic scientist at BCI, testified that he examined the fingerprints taken from the vehicle; that he compared the fingerprints taken from the vehicle and the Pepsi bottle and compared them to the fingerprints on Mossburg's fingerprint card; and, that he identified that Mossburg's fingerprints were on the Pepsi bottle and on the exterior of the driver's side window and vent window. On cross-examination, Agent Wharton indicated that he only received Mossburg's fingerprint card and the fingerprints lifted from *Page 7 
the stolen vehicle. On redirect-examination, Agent Wharton indicated that he found another fingerprint, but it did not match Mossburg's.
 {¶ 13} After Agent Wharton completed his testimony, the State rested and Mossburg moved under Crim.R. 29 for a judgment of acquittal, which the trial court overruled. Then, Mossburg testified on his own behalf.
 {¶ 14} Mossburg testified that after he left the Sunset Inn on September 9, 2005, he went to a park where a guy named Larry came in a box truck and asked him to help him move furniture; that he decided to help, because he needed the money; that he and Larry went to Fort Wayne, Indiana, and to his stepmother's to retrieve a check; that at about 11:00 the next morning, the gears on the truck stuck and they tried to fix them; that he purchased a bottle of Pepsi and his fingerprints would be on the bottle; that his fingerprints got on the exterior of the driver's side window, when he either rolled up the windows and left the truck or tried to jiggle the gear shift to help fix the gears; and, that he did not take the truck.
 {¶ 15} On cross-examination, Mossburg indicated that the truck that he got into was coming towards town. Also, when asked about the driver of the vehicle, "was this a person whom you had recognized", Mossburg responded "Yes, no!, I mean yes, I had seen him a couple of times." (Tr. p. 121-22). Mossburg continued that he and Larry were supposed to pick up someone else at the Fort Wayne Truck Stop to help Larry move; that it would have been a tight fit in the *Page 8 
cab of the truck; that after they spent some time at the truck stop, they went to Huntington, Indiana, to pick up a check from his stepmother; that the check he received is from a trust account his grandparents had set up for him; that he knew that the check would be there on Saturday, so he went over to his stepmother's house and picked it up; that he later went to National City Bank to cash his check, while Larry went to McDonald's; that they were on their way back to Fort Wayne to get help to move the furniture, but the truck broke down; that Larry called someone to come and get him, while he called Stan Dyke, one of his friends, to take him to Fort Wayne; and, that they never got to pick up the furniture, because the truck broke down.
 {¶ 16} After Mossburg testified, he rested and did not renew his motion for judgment of acquittal under Crim.R. 29. The State then called Larry Longwell, as a rebuttal witness, to testify over Mossburg's objection. Specifically, Mossburg objected because Larry Longwell was not revealed as a witness prior to the commencement of trial and he did not testify that Longwell drove the vehicle. The State responded that they did not know that Longwell could have been a witness to this case until Mossburg asked Welch on cross-examination whether someone else had access to the delivery truck.
 {¶ 17} Longwell testified that he used to work off and on for Roger Welch, plowing snow and running errands; that he used one of Welch's delivery trucks on *Page 9 
occasion; that he did not use Welch's delivery truck on September 9, 2005; that he always asked Welch if he needed to borrow the truck; and, that he did not recognize Mossburg and did not ask him to help move furniture.
 {¶ 18} After Longwell testified, Mossburg failed to renew his Crim.R. 29 motion and the jury found Mossburg guilty of one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1),(B)(5), a felony of the fourth degree.
 {¶ 19} In July 2006, Mossburg was sentenced to eighteen months in prison.
 {¶ 20} It is from this judgment Mossburg appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION FOR A DIRECTED VERDICT, PURSUANT TO CRIM.R. 29. THE EVIDENCE IS INSUFFICIENT TO ESTABLISH AN ESSENTIAL ELEMENTS (Sic.) OF CHARGE
 Assignment of Error No. II THE APPELLANT'S CONVICTIONS (Sic.) ARE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE
 Assignment of Error No. III THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF LARRY LONGWELL WITHOUT DISCLOSING HIS IDENTITY TO THE DEFENDANT/APPELLANT WITHOUT ALLOWING THE DEFENDANT/APPELLANT A CONTINUANCE WITH WHICH TO PREPARE FOR THE UNDISCLOSED WITNESS. *Page 10 
 {¶ 21} Due to the nature of Mossburg's assignments of error, we elect to address them out of order.
 Assignment of Error No. III {¶ 22} In his third assignment of error, Mossburg argues that the trial court erred in allowing the testimony of Larry Longwell. Specifically, Mossburg asserts that the State failed to disclose his identity prior to the trial and that the trial court erred by failing to allow him a continuance to prepare for the undisclosed witness. We disagree.
 {¶ 23} The Ohio Supreme Court has held "[r]ebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence."State v. McNeill, 83 Ohio St.3d 438, 446, 1998-Ohio-293, citing N.W.Graham Co. v. W.H. Davis Co. (1854), 4 Ohio St. 362, 381. Further, "[i]t is within the trial court's discretion to determine what evidence is admissible as proper rebuttal." McNeill, 83 Ohio St.3d at 446, citingN. W. Graham Co., supra; State v. Dunlap, 73 Ohio St.3d 308, 316,1995-Ohio-243. Thus, a trial court's decision regarding the admission of rebuttal testimony will not be reversed unless the trial court's decision was unreasonable, arbitrary or unconscionable. State v.Finnerty (1989), 45 Ohio St.3d 104, 107-08.
 {¶ 24} Crim.R. 16(B)(1)(e) provides, in pertinent part: *Page 11 
 Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial * * *.
"The criterion for determining whether the state should have provided the name of a witness called for rebuttal is whether the state reasonably should have anticipated that it was likely to call the witness, whether during its case in chief or in rebuttal." State v.Lorraine (1993), 66 Ohio St.3d 414, 423, citing State v. Howard (1978),56 Ohio St.2d 328, 332-33.
 {¶ 25} As Howard and Lorraine indicate, the key question when this issue arises is whether the State could have "reasonably anticipated" whether it was likely to call the witness in rebuttal. Howard,56 Ohio St.3d at 333; Lorraine, 66 Ohio St.3d at 423.
 {¶ 26} During its case in chief, the State called Roger Welch to testify about the stolen delivery truck. While Welch was cross-examined, Mossburg's counsel asked Welch whether he had an employee named Larry. Through questioning, Welch indicated that he did have a driver named Larry, who worked for him a few years prior, but never drove the delivery trucks, and that Larry was approximately 55 years old, six feet tall with dark brown hair, and still lives in the area.
 {¶ 27} During Mossburg's case in chief, Mossburg indicated that after he left the Sunset Inn, he went to a park where a guy named Larry came in a box truck and asked him to help him move furniture and that he and Larry went to *Page 12 
Indiana. On cross-examination, Mossburg indicated that he recognized Larry; that he and Larry were supposed to pick up someone else at the Fort Wayne Truck Stop to help Larry move; and, that after they spent some time at the truck stop, he and Larry went to Huntington, Indiana, to pick up a check from his stepmother.
 {¶ 28} During rebuttal, the State called Larry Longwell to testify. Longwell testified that he used to work off and on for Roger Welch, plowing snow and running errands; that he used one of Welch's delivery trucks on occasion; that he did not use Welch's delivery truck on September 9, 2005; that he always asked Welch if he needed to borrow the truck; and, that he did not recognize Mossburg and did not ask him to help move furniture.
 {¶ 29} Here, Mossburg introduced new evidence in his case in chief. Specifically, Mossburg indicated that a man named Larry picked him up in the delivery truck and asked him to help move furniture in Indiana. The State introduced Longwell's testimony to rebut Mossburg's contention that a man named Larry picked him up to help move furniture. Additionally, we find that the State could not have reasonably anticipated that Mossburg's counsel would ask Welch whether he employed someone named Larry and that Mossburg would indicate that a man named Larry asked him to go to Indiana in the stolen delivery truck. Accordingly, we conclude that the trial court's decision to allow the State *Page 13 
to present Longwell as a rebuttal witness does not qualify as an abuse of discretion or, otherwise, as reversible error.
 {¶ 30} Additionally, upon our review of the record, Mossburg never asked the trial court for a continuance to prepare for Longwell's testimony. Therefore, we find that his argument that the trial court failed to grant him a continuance is without merit.
 {¶ 31} Accordingly, Mossburg's third assignment of error is overruled.
 Assignment of Error No. I {¶ 32} In his first assignment of error, Mossburg argues that the trial court erred in failing to grant his motion for judgment of acquittal under Crim.R. 29. We disagree.
 {¶ 33} Crim.R. 29 provides:
 (A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
 {¶ 34} Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261. A *Page 14 
motion for acquittal tests the sufficiency of the evidence. State v.Miley (1996), 114 Ohio App.3d 738, 742. When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384,392, 2005-Ohio-2282, ¶ 47, citing State v. Jenks (1991),61 Ohio St.3d 259, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by Smith, supra, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955),162 Ohio St. 486, superseded by constitutional amendment on other grounds as stated by Smith, supra.
 {¶ 35} In State v. Jones, 91 Ohio St.3d 335, 346, 2001-Ohio-57, andState v. Carter, 64 Ohio St.3d 218, 223, 1992-Ohio-127, the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. In both Jones and Carter, the Ohio Supreme Court stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. "Moreover, because `a conviction based on legally insufficient evidence *Page 15 
constitutes a denial of due process,' State v. Thompkins (1997),78 Ohio St.3d 380, 386-387, 678 N.E.2d 541, a conviction based upon insufficient evidence would almost always amount to plain error." State v. Coe,153 Ohio App.3d 44, 49-50, 2003-Ohio-2732, ¶ 19; see State v. Hermann, 6th Dist. No. E-01-039, 2002-Ohio-7307, ¶ 24; State v. Casto, 4th Dist. No. 01 CA25, 2002-Ohio-6255; State v. Arrowood (Sept. 27, 1993), 4th Dist. No. 93CA505.
 {¶ 36} Mossburg's counsel made a Crim.R. 29 motion at the close of the State's case-in-chief. After the conclusion of all evidence, Mossburg's counsel failed to renew the Crim.R. 29(A) motion. As a result of Mossburg's failure to renew his Crim.R. 29(A) motion, he is precluded from alleging error on appeal, other than plain error, pertaining to the denial of the motion based on the sufficiency of the evidence introduced in the State's case-in-chief.
 {¶ 37} In order to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights."State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." State v.Biros, *Page 16 78 Ohio St.3d 426, 431, 1997-Ohio-204; see State v. Johnson, 3d Dist. No. 2-98-39, 1999-Ohio-825.
 {¶ 38} The theft statute provides that "No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent * * *." R.C. 2913.02(A)(1). "If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree." R.C.2913.02(B)(5). "A person acts knowingly * * * when he is aware that his conduct will probably cause a certain result." R.C. 2901.22(B).
 {¶ 39} Here, the State provided evidence that Mossburg's fingerprints were found on a Pepsi bottle inside and on the exterior of the driver's side windows of the stolen delivery truck. Additionally, the State provided evidence that Mossburg was in the area of the truck on the night it was stolen. Further, the State provided rebuttal testimony of Welch's former employee, Larry Longwell, who indicated that he did not know Mossburg, did not ask him to move furniture, and did not drive the delivery truck on the day it was stolen. In response, Mossburg admitted that he was in the delivery truck; however, he was asked by a person named Larry to come to Indiana to help move furniture and that he never drove the vehicle. Additionally, Mossburg admitted that he purchased a bottle of Pepsi and his fingerprints would be on the bottle and indicated that his fingerprints got on the *Page 17 
exterior of the driver's side window, when he either rolled up the windows and left the truck or tried to jiggle the gear shift to help fix the gears. Further, Mossburg testified that he did not take the truck.
 {¶ 40} Reviewing the evidence in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found Mossburg guilty.
 {¶ 41} Accordingly, Mossburg's first assignment of error is overruled.
 Assignment of Error No. II {¶ 42} In his second assignment of error, Mossburg argues that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 43} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id. *Page 18 
 {¶ 44} The theft statute provides that "No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent * * *." R.C. 2913.02(A)(1). "If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree." R.C.2913.02(B)(5). "A person acts knowingly * * * when he is aware that his conduct will probably cause a certain result." R.C. 2901.22(B).
 {¶ 45} Here, the State provided evidence that Mossburg's fingerprints were found on a Pepsi bottle inside and on the exterior of the driver's side windows of the stolen delivery truck. Additionally, the State provided evidence that Mossburg was in the area of the truck on the night it was stolen. Further, the State provided rebuttal testimony of Welch's former employee, Larry Longwell, who indicated that he did not know Mossburg, did not ask him to move furniture, and did not drive the delivery truck on the day it was stolen. In response, Mossburg admitted that he was in the delivery truck; however, he was asked by a person named Larry to come to Indiana to help move furniture and that he never drove the vehicle. Additionally, Mossburg admitted that he purchased a bottle of Pepsi and his fingerprints would be on the bottle and indicated that his fingerprints got on the exterior of the driver's side window, when he either rolled up the windows and left *Page 19 
the truck or tried to jiggle the gear shift to help fix the gears. Further, Mossburg testified that he did not take the truck.
 {¶ 46} A jury is free to believe all, part, or none of any witness' testimony. State v. Antill (1964), 176 Ohio St. 61. Here, if the jury chose not to believe Mossburg's testimony that he did not drive the truck and that Larry had asked him to come to Indiana to help move furniture, we cannot say that in weighing all of the evidence that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387. Because the weight to be given to the evidence and the credibility of witness are primarily reserved for the trier of fact, State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, we find that Mossburg's conviction was not against the manifest weight of the evidence.
 {¶ 47} Accordingly, we overrule Mossburg's second assignment of error.
 {¶ 48} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] It is undisputed that Brookside Dairy is located in Van Wert County, Ohio. *Page 1