OPINION *Page 2 
{¶ 1} Appellant Frankie Graewe, Sr. appeals his conviction, in the Tuscarawas County Court of Common Pleas, on one count of aggravated arson. The relevant procedural facts leading to this appeal are as follows.
 {¶ 2} On September 21, 2006, a residence at 449 Center Street, Newcomerstown, Ohio, was destroyed by a fire. Earlier that day, appellant had been evicted from that residence and served with a civil protection order obtained by Bonnie Snively, appellant's live-in girlfriend. The home, which was of modular design, was owned by Bonnie Snively's sister, Deborah Postel, and Deborah's husband.
 {¶ 3} Following an investigation by police and fire officials, as further discussed infra, appellant was indicted on January 24, 2007, on one count of aggravated arson, R.C. 2909.02(A)(2), a felony of the second degree. Appellant pled not guilty. Following discovery, appellant filed a notice of alibi, stating that he was at a nearby house on Mulvane Street, Newcomerstown, at the time of the fire.
 {¶ 4} On September 25, 2007, the trial court issued an order, pursuant to several pre-trial motions before the court, holding, inter alia, that the State would be *Page 3 
permitted to introduce evidence of appellant's prior conviction for three counts of felonious assault.
 {¶ 5} A jury trial was conducted on September 26 through September 28, 2007. The jury found appellant guilty of aggravated arson. Following a sentencing hearing on October 4, 2007, appellant was sentenced to seven years in prison.
 {¶ 6} Appellant filed a notice of appeal on October 22, 2007. He herein raises the following four Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 8} "II. THE TRIAL COURT ERRED IN ADMITING (SIC) EVIDENCE WHICH WAS UNFAIRLY PREJUDICIAL.
 {¶ 9} "III. THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW BY THE MISCONDUCT OF THE PROSECUTOR.
 {¶ 10} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS BY FAILING TO GRANT A MISTRIAL FOR VIOLATIONS OF BRADY V. MARYLAND AND PROSECUTORIAL MISCONDUCT."
 I. {¶ 11} In his First Assignment of Error, appellant contends his conviction for aggravated arson is against the manifest weight of the evidence and is not supported by sufficient evidence. We disagree.
 Manifest Weight *Page 4 {¶ 12} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 Review of State's Witnesses {¶ 13} The State first presented evidence, via the chief deputy of the Tuscarawas County Clerk of Courts, Jeanne Stephan, that a domestic violence CPO petition, bearing the name of Bonnie Snively as movant, had been filed on September 20, 2006, just one day before the fire in question. The petition listed appellant and Bonnie Snively as residing at 449 Center Street. A sheriffs return indicated that appellant had been served with the petition and order, as well as an order to vacate the premises at 449 Center Street.
 {¶ 14} The State next called Jennifer Hursey, a social worker at Harbor House, a domestic violence shelter. Hursey testified that Bonnie Snively reported to the shelter on September 11, 2006, about ten days before the fire. Snively was reported to have been bruised all over her body at that time. She remained at the shelter until June 2007.
 {¶ 15} Deborah Postel, who jointly owned the home at 449 Center Street with her husband, next took the stand, recalling numerous disputes occurring between appellant *Page 5 
and Bonnie (her sister). Some of these disputes resulted in someone physically damaging the modular home, including punching holes in the interior. On several occasions, appellant had stated that if he couldn't live in the house, nobody was going to live there. Tr. at 156.[1]
Postel also had requested several times that appellant refrain from walking away from grease cooking on the stove, as he habitually would do when he prepared food. Postel also testified that she was aware of no electrical or mechanical problems in the house that would have led to a fire. She also noted that the only other persons to have house keys, other than she and her husband, were Bonnie and appellant.
 {¶ 16} The jury then heard Deputy Dale Gowins, a court process server, relate his visit to 449 Center Street the morning of the day of the fire.[2] At about 11 AM that day, Gowins took to the residence the CPO papers pertaining to Bonnie and the eviction notice obtained by Deborah Postel. Gowins found appellant outside, and asked to discuss the situation with him inside. When presented with the paperwork, appellant became extremely angry, although he did not threaten or assault the deputy. As they went over the papers, Gowins realized that a female acquaintance of appellant's, Casey Myers, was present in the house. Appellant declined the deputy's offer to give him a ride to another residence; the deputy thereupon left at about 11:42 AM.
 {¶ 17} According to Casey Myers, after Gowins left the premises, appellant went into a rage and started tearing up the interior of the house. She testified that appellant *Page 6 
moved some of his effects to a semitrailer at the edge of the property, then, with Casey waiting outside, went back into the house, ostensibly to "get his boots." Tr. at 244-245. He later came back out, carrying no boots or other items. Casey recalled that she and appellant then proceeded to the home of Anita Weber, which was less than a block away. According to Casey, appellant made the following admission to her at a bar later that night: "He told me he [had] sat a pan of grease on top of the stove, turned it on high and put paper towels around it and set bug bombs off and he said if I said anything to anybody or told on him, that I would get what Bonnie gets." Tr. at 252.
 {¶ 18} The State then called Kimberly Wilburn and Allen Smart, both neighbors of the former residence at 449 Center Street. Both of these witnesses testified they saw appellant at the rear of Smart's house, which is just behind 449 Center Street, at 12:30 PM on September 21, 2006. Smart added that he saw no one entering or exiting the 449 Center residence during that time frame.
 {¶ 19} The next witness was Robert McGarry, the assistant fire chief. He stated he entered the house as the fire was being battled, noticing that the inside had been ransacked, with furniture apparently piled up near the front entrance. He noticed that appellant did not come near the fire scene, even though the firefighters were on scene for over four hours. A State Fire Marshall forensic lab chemist, Krista Rajendram, Ph.D., was next called to go over the tests made on the linoleum floor samples taken from the burned house. Her tests did not reveal any "ignitable liquids," although she stated that such substances are sometimes washed away by water from the firefighters, or simply consumed in the flames. Tr. at 337-340. She also found no evidence of cooking oil in a *Page 7 
second test procedure, which we will further discuss in appellant's Fourth Assignment of Error, infra.
 {¶ 20} The final witness for the State was investigator John Weber of the State Fire Marshall's Office. Discussing, inter alia, the discovery of melted metal pots near the stove, the damage near the stove area, and the "V" shaped burn patterns in the kitchen, he opined that the fire was human set and ruled out an accident. Tr. at 408-457.
 Review of Defense Witnesses {¶ 21} Defense counsel in turn called two witnesses, one of which was appellant. The first, Anita Weber, presented an alibi that appellant was at her house right around 12 noon on September 21, 2006. Weber conceded on cross-examination that she has a felony record for cocaine trafficking and passing bad checks. Appellant, in his own defense, denied setting the fire, and claimed that the responding fire fighters must have been responsible for the disarrayed furniture. He testified that he had no knowledge as to why Bonnie had numerous bruises when she appeared at the shelter several days before the fire. He admitted to having consumed alcohol the morning of the fire, when Deputy Gowins served the court papers. It was also revealed that appellant had been previously convicted of three counts of felonious assault on a police officer.
 Conclusion re: Manifest Weight {¶ 22} This Court has previously recognized because of the nature of the crime, proof of arson must often rely heavily upon circumstantial evidence and the inferences one may draw from such evidence. Abon, Ltd.v. Transcontinental Ins. Co., Richland App. No. 2004-CA-0029,2005-Ohio-3052, ¶ 70, citing State v. Funk, Franklin App. No. 00AP-1352, 2001-Ohio-4110. Upon review of the record in this case as summarized *Page 8 
above, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.
 Sufficiency of the Evidence {¶ 23} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 24} As previously noted, appellant herein was charged under R.C. 2909.02(A)(2), aggravated arson, which reads: "No person, by means of fire or explosion, shall knowingly * * * [c]ause physical harm to any occupied structure."
 {¶ 25} Appellant first contends the State failed to establish that the burned house was an "occupied structure" at the time of the fire. Pursuant to R.C. 2909.01(C) an "`[o]ccupied structure' means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
 {¶ 26} "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
 {¶ 27} "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
 {¶ 28} "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
 {¶ 29} "(4) At the time, any person is present or likely to be present in it." *Page 9 
 {¶ 30} Appellant, focusing on R.C. 2909.01(C)(4), contends the State failed to prove the "likely to be present" element of the definition. However, 2909.01(C)(1) additionally defines "occupied structure" as any house or building which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present.
 {¶ 31} The record in the case sub judice reveals testimony that Bonnie Snively had been living in the residence at 449 Center Street with appellant for almost two years. Tr. at 154. Bonnie Snively's personal property still remained in the modular home, as well as her two cats. One of the reasons she was not present at the house on the day of the fire was because she had been removed to the Harbor House shelter for her protection due to allegations of violence from appellant. Tr. at 160. Additionally, as of the date of the fire, appellant still residing in the home at 449 Center Street, as was testified to by the process server, Deputy Dale Gowins, who personally served the CPO and notice to vacate shortly before the outbreak of the fire. Tr. at 229. According to Gowins, appellant initially told him at the time that he wasn't leaving because he had nowhere to go. Appellant himself further stated at trial that he was living there until September 21, 2006. Tr. at 542. From the totality of the evidence, we find the facts are sufficient to meet the burden of proving a "permanent dwelling or habitation" which was temporarily unoccupied at the precise start of the fire.
 {¶ 32} Appellant secondly contends the State failed to prove beyond a reasonable doubt that appellant intentionally set the fire. We first reiterate that a jury is free to believe all, part, or none of any witness' testimony. State v. Mossburg, Van Wert App. No. 15-06-10,2007-Ohio-3343, ¶ 46, citing State v. Antill (1964), 176 Ohio St. 61, *Page 10 197 N.E.2d 548. In light of the State's evidence we have analyzed in regard to appellant's manifest weight argument above, particularly his after-the-fact remarks and threats made in the presence of Casey Myers, we hold reasonable triers of fact could have found, beyond a reasonable doubt, that appellant knowingly caused physical harm to an occupied structure by means of fire.
 {¶ 33} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 34} In his Second Assignment of Error, appellant contends the trial court erred in permitting "other acts" evidence regarding him to be presented to the jury. We disagree.
 {¶ 35} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027.
 {¶ 36} Evid. R. 403(A) states as follows: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." In addition, Evid. R. 404(A) provides, with certain exceptions, that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid. R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is *Page 11 
not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 37} Appellant maintains the trial court should have excluded (1) evidence suggesting appellant's past domestic violence, (2) evidence that Bonnie had bruises on her when she went to the shelter, and (3) evidence that appellant was served with a CPO the day of the fire. In light of the entire record in the case sub judice, we hold it was within the trial court's discretion to allow into evidence this domestic violence-related information for the purpose of proving the possible motive and plan of appellant in seeking retribution against Bonnie and her sister, Deborah, the house's owner. Cf. State v. Banks (1986),31 Ohio App.3d 57, 61. Moreover, a modicum of background information was necessary to explain the presence of Deputy Gowins at the house on the morning of the fire. Furthermore, juries are presumed to follow and obey the limiting instructions given them by the trial court. State v.DeMastry, 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, citing State v. Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.
 {¶ 38} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 39} In his Third Assignment of Error, appellant argues that prosecutorial misconduct deprived him of due process of law. We disagree.
 {¶ 40} A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the *Page 12 
defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141,661 N.E.2d 1019, 1996-Ohio-227. Furthermore, isolated comments by a prosecutor are not to be taken out of context and given their "most damaging meaning." See Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868,40 L.Ed.2d 431. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. State v. Loza, (1994), 71 Ohio St.3d 61, 78,641 N.E.2d 1082.
 {¶ 41} Appellant recites numerous alleged instances of improper conduct by the prosecutor on this case. Appellant first maintains the prosecutor, during opening arguments, exaggerated the import of appellant's removal of his box of family photos and two clothes baskets by telling the jury "a lot, if not most, of his stuff had been moved out to an adjacent trailer." See Tr. at 120. Appellant also directs us to portions of transcript wherein the prosecutor allegedly led witnesses and "attempted to testify for [them]." See direct examination of Casey Myers, Tr. at 252-254; direct examination of Kimberly Wilburn, Tr. at 293. Appellant further points to attempts by the prosecutor to elicit information about the fire which he urges should have come from Bonnie Snively, who was never called as a witness. Appellant also notes that the prosecutor, during his cross-examination of appellant, tended to characterize each witness who had disagreed with appellant's version of events as a liar. See Tr. at 558.
 {¶ 42} Clearly, this trial was one punctuated by frequent objections and sidebars, and the prosecution was admonished at several points to refrain from leading witnesses or making statements in the nature of self-testimony. Upon review, while we indeed find some of the cited instances of prosecutorial conduct noted in appellant's brief to be *Page 13 
improper, we do not conclude the statements in toto prejudicially affected appellant's substantial rights. Loza, supra.
 {¶ 43} We therefore find no reversible error based on the basis of prosecutorial misconduct. Appellant's Third Assignment of Error is overruled.
 IV. {¶ 44} In his Fourth Assignment of Error, appellant argues the trial court erred in denying his request for a mistrial for allegedBrady violations by the prosecutor.[3] We disagree.
 {¶ 45} Crim. R. 16(B)(1)(f) reads: "Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *."
 {¶ 46} A trial court has discretion to determine what sanction is appropriate when the state fails to disclose discoverable material.State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97; State v.Parson (1983), 6 Ohio St.3d 442, 445, 453 N.E.2d 689. Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127,580 N.E.2d 1. The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion.Sage, supra, at 182. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. *Page 14 
 {¶ 47} In Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215, the United States Supreme Court held that the "[suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a violation, a defendant must prove that the prosecution failed to disclose evidence upon request, the evidence was favorable to the defense, and the evidence was material. State v.Garn (Feb. 21, 2003), Richland App. No. 02CA45, citing Moore v.Illinois (1972), 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706. "[T]he test of Brady materiality is whether there exists a reasonable probability that the result would have been different had the evidence been disclosed to the defense." State v. Franklin, Montgomery App. No. 19140, 2002-Ohio-6193, citing State v. LaMar (2002), 95 Ohio St.3d 181,187, 767 N.E.2d 166, 2002-Ohio-2128.
 {¶ 48} During defense cross-examination of the State's chemist in the case sub judice, it was disclosed that after an original State Fire Marshal report concluded that the flooring samples from the house did not contain a flammable liquid, a second report had been generated on or about January 2, 2007. This second report, which was not supplied to defense counsel prior to trial, concluded that upon further testing, the floor samples specifically did not contain evidence of cooking oil.
 {¶ 49} The record reveals that upon appellant's motion for a mistrial, the trial court sent the jury out and conducted an extensive voir dire of the fire marshal investigator and the chemist who prepared the report. Given that other testimony established that no liquid accelerants (which would have included cooking oil) were *Page 15 
found on the floor samples, we are unpersuaded the trial court's denial of a mistrial constituted an abuse of discretion under these circumstances.
 {¶ 50} Appellant's Fourth Assignment of Error is therefore overruled.
 {¶ 51} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.
Wise, J. Gwin, P. J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.
Costs assessed to appellant.
[1] Another witness, Carrie Gaines, subsequently testified to hearing appellant make the same remark. Tr. at 184.
[2] According to the dispatcher, Carol Schreffler, the 911 call for the fire came in at 12:55 PM on the afternoon of September 21, 2006. Tr. at 198. Gerald Minor, a part-owner of a neighboring business, later testified that he was the person who made the original 911 call. Tr. at 317.
[3] Appellant also herein again raises prosecutorial misconduct in general terms, which we will not revisit in this assigned error. *Page 1