[Cite as *State v. Adams*, 2009-Ohio-6863.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 4-09-16

    v.

AMBER N. ADAMS,                    O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 08 CR 10348**

**Judgment Affirmed**

**Date of Decision: December 28, 2009**

APPEARANCES:

    *Clayton J. Crates* for Appellant

    *Russell R. Herman* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Amber N. Adams (hereinafter "Adams"), appeals the Defiance County Court of Common Pleas' judgment of conviction and restitution order. For the reasons that follow, we affirm.

{¶2} On October 6, 2008, the Defiance County Grand Jury indicted Adams on one (1) count of receiving stolen property in violation of R.C. 2913.51, a fifth degree felony. (Doc. No. 1). On October 21, 2008, Adams was arraigned and entered a plea of not guilty. (Doc. No. 10).

{¶3} On April 20, 2009, the matter proceeded to a jury trial, and the jury found Adams guilty. (Apr. 20, 2009 Tr. at 267); (Doc. Nos. 31, 33).

{¶4} On June 4, 2009, a sentencing hearing was held, and the trial court sentenced Adams to three (3) years community control but reserved an eleven (11) month term of imprisonment in the event Adams violated her community control. (June 10, 2009 JE, Doc. No. 35). In addition to the general community control conditions, the trial court specifically ordered the following special conditions:

> **1. The Defendant shall pay restitution in the amount of $1,729.47 * * *;**
> **2. The Defendant shall serve five (5) days at the Corrections Center of Northwest Ohio.**

(Id.). The trial court also granted a stay of the execution of sentence pending appeal. (Id.). A community control agreement and order was filed reflecting the

specific community control terms and conditions ordered by the trial court. (Doc. No. 34).

{¶5} On July 8, 2009, Adams filed a notice of appeal. (Doc. No. 37). Adams now appeals raising three assignments of error for our review.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN NOT FINDING INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.**

{¶6} In her first assignment of error, Adams argues that the trial court erred by failing to find insufficient evidence to support her conviction. Specifically, Adams points out that there was no evidence that she received, retained, or disposed of the property of another, since the testimony was that Davenport removed the property owned by L&S transportation. Adams also asserts that the testimony supports that Davenport acted alone when he disposed of the property at Metal Management. Adams also argues that the State failed to show that she was a joint offender. Adams further argues that the State failed to show that she had "reasonable cause to believe" that the property was obtained through a theft offense since Davenport regularly sold metal at Metal Management and OmniSource. We disagree.

{¶7} As an initial matter, Adams failed to move for a judgment of acquittal pursuant to Crim.R. 29(A); and therefore, has waived all but plain error

on appeal. *State v. Robinson*, 177 Ohio App.3d 560, 2008-Ohio-4160, 895 N.E.2d 262, ¶18, overruled on other grounds by *State v. Robinson* (Nov. 18, 2009), Slip Opinion No. 2009-Ohio-5937. We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, quoting *State v. Long* (1978) 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, citing *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894. That being said, this Court has recognized that a conviction based upon insufficient evidence 'almost always' amounts to plain error because "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Alvarado*, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶24, citing *State v. Mossburg*, 3d Dist. No. 15-06-10, 2007-Ohio-3343, ¶35, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 and *State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, 790 N.E.2d 1222, ¶19.

**{¶8}** When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶9}** The criminal offense of receiving stolen property is codified in R.C. 2913.51, which provides, in pertinent part:

> **(A)     No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.**
>
> **(B)     * * * If the value of the property involved is five hundred dollars or more and is less than five thousand dollars * * * receiving stolen property is a felony of the fifth degree.**

In determining whether reasonable minds could conclude that the defendant knew or should have known the property was stolen, the Court may consider:

> **(a)   the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise.**

*State v. Davis* (1988), 49 Ohio App.3d 109, 112, 550 N.E.2d 966, citations omitted. Likewise,

> **[i]n determining whether the defendant had reasonable cause to believe that the property was obtained through a theft offense you must put yourself in the position of this defendant with**

> **his/her knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him/her at that time. You must consider the conduct of the persons involved and determine if their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense.**

2 Ohio Jury Instructions (2009), Section CR 513.51. R.C. 2923.03, the complicity statute, provides, in pertinent part:

> **(C)     No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:**
>
> **(1)   Solicit or procure another to commit the offense;**
>
> **(2)   Aid or abet another in committing the offense;**
>
> **\* \* \***
>
> **(F)   Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.**

{¶10} At trial, Brian Caster testified that he occasionally lives at the storage locker he rents located at the 15/18 split, which is part of the TriStar Development unit. (Apr. 20, 2009 Tr. at 145). Caster testified that, in September 2008, he witnessed a red hatchback Toyota Matrix pull up to Lewis Gibler's flatbed truck, which was next to his storage unit, and a man from the vehicle loading some property into the back of the car. (Id. at 145-46). Caster testified that he saw at least one, maybe two, large semi-size brake drums in the back of the

car. (Id. at 146). Caster testified that he approached the man and asked him what he was doing, and the man stated that his name was "Pete with John's Towing," and he was there to pick up some things for John's Towing. (Id. at 147). Caster testified that the man did not seem startled or like he had "busted him doing anything wrong" so he believed the man and went back into his storage unit. (Id.). The next morning, Caster asked Gibler if anyone was supposed to retrieve items from his place the prior night, and Gibler said no and called the Sheriff's Office. (Id. at 148).

{¶11} Lewis Gibler testified that he owns a truck driving and truck repairing business called "L and S Transportation," which is located at the TriStar Development unit on the corner of (State Routes) 18 and 15 North. (Id. at 105-06). On September 15, 2008, Gibler called the Sheriff's Office after he noticed that he was missing some semi truck tire rims from his property. (Id. at 107). Gibler testified that the rims were located outside the storage unit next to a semi that he was rebuilding. (Id. at 108). Gibler further testified that he called the Sheriff's Office after Brian [Caster] told him that he saw someone outside picking up the tire rims at 3:00 a.m. the previous night. (Id. at 109). Gibler testified that when Caster told him that the vehicle was a small red Matrix, he knew whose car it was. (Id. at 111). Gibler testified that Christopher Adams, the defendant's prior husband, used to do work for him. (Id.). Gibler testified that Amber Adams had

been out to his property on several occasions and was familiar with his business operations as well as what property he kept on the premises. (Id. at 112). After Gibler talked with Caster, he found out that the Matrix car was made by Toyota, and that he knew Adams' car was a red Toyota. (Id. at 114-15). Gibler then found the red Toyota Matrix car parked at Adams' trailer. (Id. at 115-16). Gibler testified that he was missing twelve (12) semi rims, a bell housing, a frame step, a water muffler for a Polaris jet ski, and some miscellaneous aluminum pipe. (Id. at 117). Gibler estimated that the aluminum bell housing was worth $1,200.00 and the rims were worth $80 to $90 each. (Id. at 127-28).

{¶12} Carol Poulson testified that she has been employed as a parts manager at Defiance Truck Sales and Service for the past thirteen (13) years. (Id. at 153). Poulson testified that a new aluminum bell housing was worth approximately $1,300.00, and a used aluminum bell housing was worth half of that price, or $650. (Id. at 155). Poulson testified that a new twenty-four (24) inch frame step would cost $125, and a used one would cost half that amount. (Id. at 155-56). Poulson further testified that new semi truck rims ranged from $125 to $130 each and half of that amount for reconditioned rims. (Id. at 156). Poulson identified State's exhibit ten (10) as the estimate she created upon which her testimony was based. (Id. at 157-58).

{¶13} Bruce Wilhelm testified that, for the past five (5) years, he was a plant manager at Sims Metal Management in Defiance, Ohio, and, as such, he was a manager of company records. (Id. at 165). Wilhelm testified that Metal Management maintains the name and driver's license (or some other form of I.D.) of every person who sells material to the company. (Id. at 166-67). Wilhelm identified State's exhibit eleven (11) as a "purchase ticket of scrap. Item number one is one heavy metal steel. Item number two is aluminum cast clean" dated September 13, 2008 purchased from someone driving a red Toyota license plate EGC3156. (Id. at 167-68); (State's Ex. 11). Wilhelm identified State's exhibit twelve (12) as "number one heavy metal steel that was purchased on September 15th of '08. * * * this time the red Toy[ota] turns out to be a red Vibe, evidently, license number EGC3156. (Id. at 169); (State's Ex. 12). Wilhelm further identified defendant's exhibit B as a purchase receipt dated September 11, 2008 for heavy metal sold to Metal Management by Derrick Davenport. (Id. at 171); (State's Ex. B).

{¶14} Deputy Kevin Fackler of the Defiance County Sheriff's Office testified that, on September 15, 2008, he responded to TriStar Development at the 15/18 split regarding items being stolen at this location. (Id. at 174-75). Deputy Fackler testified that he spoke with Gibler who informed him that he was missing twelve (12) semi rims, three (3) brake drums, an aluminum bell housing, a jet ski

intake, and miscellaneous scrap. (Id. at 176). Gibler informed Deputy Fackler that Caster saw a bright red Toyota loading up the rims at 3:00 a.m. the previous night. (Id.). Deputy Fackler testified that Gibler informed him that the only person he knew with a bright red vehicle was Amber Adams because her husband used to work with him. (Id. at 178). Deputy Fackler further testified that an employee at Metal Management informed him that an individual—later identified as Dereck Davenport—driving a bright red car had sold a bunch of semi rims. (Id. at 178-79). Deputy Fackler also testified that he received another report of a theft at Affordable Autos, which was located in the same complex as L and S Transportation, near the 15/18 split. (Id. at 181). Deputy Fackler testified that Amber Adams was the registered owner of the vehicle from which the semi rims were sold to Metal Management according to its receipts. (Id. at 182). Deputy Fackler also discovered that Davenport had recycled some items at OmniSource on September 11, 2008. (Id. at 185). However, he was only able to locate the property at Metal Management, which included: twelve (12) semi rims, one (1) semi brake drum, two (2) axles, and side steps. (Id. at 186). Deputy Fackler also testified that, prior to asking for an attorney during her interview, Adams admitted that she was with Davenport when he sold the semi rims to Metal Management. (Id. at 191, 194).

**{¶15}** Sergeant Clifton Vandemark of the Defiance County Sheriff's Office testified that he assisted Deputy Fackler in interviewing Amber Adams. (Id. at 199-200). During the interview, Sergeant Vandemark asked Adams if it was true she was with Davenport when he sold the rims at Metal Management, to which Adams motioned and stated "yes." (Id. at 200).

**{¶16}** Deputy Aaron Giesige of the Defiance County Sheriff's Office testified that, on March 27, 2007, he responded to Gustwiller Electric's complaint of stolen copper wire and scrap at its business. (Id. at 217-18). Surveillance video at the business captured images of two subjects loading items into a Dodge Shadow the previous night. (Id. at 218). Deputy Giesige testified that he subsequently located a similar vehicle as he was driving through town, so he initiated a traffic stop and discovered that the vehicle's two occupants were Chris and Amber Adams. (Id. at 219-20). The vehicle's trunk was empty, but, after law enforcement informed her about the video surveillance, Amber admitted that she and her husband, Chris, stole the copper wire and scrap metal from Gustwiller Electric and sold it to Metal Management. (Id. at 221-22). Deputy Giesge also discovered that the vehicle used during the theft—the Dodge Shadow—was registered to Amber Adams. (Id. at 222-23).

**{¶17}** Thereafter, the State rested, and the defense rested without moving for a Crim.R. 29(A) judgment of acquittal. (Id. at 126).

{¶18} Upon review of the record, we cannot conclude that the trial court committed plain error by failing to find insufficient evidence to support Adams' receiving stolen property conviction. The evidence, at a minimum, established that Adams aided or abetted Davenport in obtaining the property of another and selling it for scrap. The testimony presented established that Adams was aware of Gibler's truck parts at L and S Transportation because her former husband, Chris Adams, worked for Gibler. (Apr. 20, 2009 Tr. at 111-12). From this evidence, a rational juror could have inferred that Adams aided Davenport by informing him about Gibler's property for the purpose of obtaining it through Davenport's theft offense. The evidence also demonstrated that the vehicle into which the truck parts were loaded and from which they were sold to Metal Management was registered to Adams. (Id. at 182). Furthermore, the testimony demonstrated that Adams was present with Davenport when he sold the stolen semi rims to Metal Management. (Id. at 191, 194). A rational juror could conclude that, by allowing Davenport to use her car and accompanying him when he sold the stolen semi rims, she was aiding and abetting him in retaining or disposing of another's property.

{¶19} Construing the evidence in a light most favorable to the State, a rational juror could also conclude that Adams knew or reasonably should have known that the semi rims sold *from her car and in her presence* to Metal

Management were obtained by a theft offense. Aside from the fact that Davenport did not likely have knowledge of Gibler's truck parts apart from Amber, the jury also heard evidence that Adams had been involved in a similar theft of copper wire with her former husband, Chris Adams. This evidence, although inadmissible for purposes of showing Adams' propensity to commit the crime, is relevant for purposes of establishing Amber's knowledge that the truck parts were obtained from a theft offense. Evid.R. 404(B); *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶¶20-24 (evidence that defendant stole the vehicle was admissible under Evid.R. 404(B) for purposes of receiving stolen property charge, where the evidence was offered to show defendant's *knowledge* that the car was stolen); *State v. Smith* (1990), 49 Ohio St.3d 137, 139-40, 551 N.E.2d 190 (evidence of other acts may be admissible to establish an element of a crime— intent).

**{¶20}** Finally, construing the evidence in a light most favorable to the prosecution, a rational juror could conclude that the value of the stolen property was more than five hundred dollars ($500) but less than five thousand dollars ($5,000) pursuant to R.C. 2913.51(C). Gibler testified that the bell housing was worth around $1,200.00, and the twelve (12) semi rims were worth $80-$90 each. (Apr. 20, 2009 Tr. at 127-28). Poulson testified that a new aluminum bell housing was worth approximately $1,300.00, and a used aluminum bell housing was worth

half of that price, or $650. (Id. at 155). Pouslon testified that a twenty-four (24) inch frame step would cost $125 to replace and a used one would cost half that amount. (Id. at 155-56). Poulson further testified that the semi rims ranged from $125 to $130 each for new rims and half of that amount for reconditioned rims. (Id. at 156); (State's Ex. 10). Based upon this testimony, a rational juror could conclude that the value of the stolen property was more than $500 but less than $5,000 in value pursuant to R.C. 2913.51(C).

{¶21} For all the aforegoing reasons, we cannot conclude that the trial court committed plain error by failing to find insufficient evidence to support Adams' receiving stolen property conviction.

{¶22} Adams' first assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT IMPROPERLY ADMITTED EVIDENCE OF A PRIOR BAD ACT WITHOUT A PROPER FOUNDATION.**

{¶23} In her second assignment of error, Adams argues that the trial court erred when it admitted evidence of a prior bad act without a proper foundation. Specifically, Adams argues that the State never introduced a certified copy of conviction into the record, but the officer was allowed to testify concerning his recollection of the case's disposition. Adams further argues that the evidence should not have been admitted because the State failed to offer the exact Evid.R.

404(B) exception for which the evidence was offered. Adams also argues that the defense never claimed accident, mistake, or any other Evid.R. 404(B) exception so the State was not permitted to admit this evidence at trial. We disagree.

**{¶24}** To begin with, the admissibility of relevant evidence rests within the sound discretion of the trial court. *City of Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, citing *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 436 N.E.2d 1008. Absent an abuse of discretion, as well as a showing that the appellant suffered material prejudice, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶130, citations omitted. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *State v. Herring* (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940.

**{¶25}** Although "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," "[e]vidence of other crimes, wrongs, or acts * * * may[] be admissible for * * * proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(A), (B).

When the other act and the offense for which the defendant is being tried occurred reasonably close in time and the defendant used a similar scheme, plan, or system to commit both offenses, the "other acts" evidence may be used to show the defendant's intent. *State v. Blonski* (1997), 125 Ohio App.3d 103, 113, 707 N.E.2d 1168, citing *State v. Elliott* (1993), 91 Ohio App.3d 763, 771, 633 N.E.2d 1144. "A conviction will not be reversed because a specific purpose under Evid.R. 404(B) was not asserted by the state provided that the evidence meets one of the stated purposes under Evid.R. 404(B)." *State v. Muncey* (Feb. 8, 1999), 12th Dist. No. CA98-03-013, at *3, citing *State v. Davis* (1991), 62 Ohio St.3d 326, 338, 581 N.E.2d 1362 and *State v. Howard* (Apr. 8, 1993), 8th Dist. No. 62191; *State v. McCoy*, 9th Dist. No. 22373, 2005-Ohio-4262, ¶9, citing *Davis*, 62 Ohio St.3d at 338.

{¶26} The testimony at issue here involved Adams' prior act of aiding and abetting her former husband, Christopher Adams, in stealing copper wire and scrap metal and selling it to Metal Management. Prior to presenting the testimony, the State proffered Deputy Aaron Giesige's testimony before the trial court out of the jury's presence. (Apr. 20, 2009 Tr. at 203-14). Giesige's proffered testimony revealed, in relevant part, that, on March 27, 2007, he responded to a theft complaint at Gustwiller Electric involving some copper wire and other items that were located behind the business. (Id. at 205-06). A surveillance video captured a

white Dodge Shadow pulling up behind the business the previous night, and a male and female loading items into the vehicle. (Id. at 207). Sometime after the incident, Deputy Giesige located a vehicle matching the one captured in the surveillance video, so he initiated a traffic stop and discovered that Chris and Amber Adams were the occupants. (Id.). Deputy Giesige testified that, while initially denying her part in the theft, Amber Adams eventually admitted that she and her husband took the wire from Gustwiller Electric and sold it to Metal Management. (Id. at 208-09). It was also disclosed during this testimony that the vehicle used in the copper wire theft was registered to Amber Adams. (Id. at 211-12).

{¶27} Adams objected to the evidence on the basis of relevancy, improper character evidence, and it was prejudicial. (Id. at 203, 210). The State argued that the evidence was proper to show motive, intent, plan, scheme, opportunity, and lack of mistake under Evid.R. 404(B). The trial court agreed with the State that the evidence was admissible, and that its probative value was not outweighed by its prejudicial effect. (Id. at 213).

{¶28} We find no abuse of discretion with the trial court's ruling. Adams was being tried for aiding and abetting Davenport, her then boyfriend, in selling scrap metal which she knew or reasonably should have known was stolen. Adams' prior act occurred on March 27, 2007, and Adams' subsequent act

- 17 -

occurred on September 15, 2008, which is a little over a year and a half later.  In both cases, Adams assisted men with whom she was romantically involved—first her husband, then a boyfriend; the scrap metal was loaded into a vehicle owned by Adams—first a white Dodge Shadow, then a red Toyota Matrix; and the stolen scrap metal in both cases was sold to Metal Management.  Considering the relative proximity in time between the two offenses and that Adams used a similar scheme, plan, or system to commit both offenses, the trial court did not abuse its discretion by admitting Deputy Giesige's testimony since it could be used to show the Adams' intent under Evid.R. 404(B). *Blonski*, 125 Ohio App.3d at 113, citing *Elliott*, 91 Ohio App.3d at 771.  Aside from that, as previously noted, the evidence was admissible to show Adams' knowledge of whether the truck parts were obtained from a theft offense. *Black*, 2009-Ohio-1629, at ¶¶20-24.  Since the evidence was permissible to show intent and knowledge under Evid.R. 404(B), whether it was properly admitted to show "lack of mistake" is irrelevant.  It is also irrelevant that the State failed to specify which of the Evid.R. 404(B) exceptions applied. *Muncey*, 12th Dist. No. CA98-03-013, at *3, citing *Davis*, 62 Ohio St.3d at 338 and *Howard*, 8th Dist. No. 62191; *McCoy*, 2005-Ohio-4262, at ¶9.  Additionally, it is important to note that the trial court instructed the jury regarding the proper and improper uses of this evidence. (Apr. 20, 2009 at 224-25).  Juries are presumed to follow and obey the trial court's limiting instructions. *State v.*

*DeMastry*, 155 Ohio App.3d 110, 2003-Ohio-5588, 799 N.E.2d 229, ¶84 citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.

**{¶29}** Therefore, in light of its admissibility under Evid.R. 404(B), the trial court's curative instruction, and the other evidence of Adams' guilt, we cannot conclude that Adams was materially prejudiced by the trial court's admission of Deputy Giesige's testimony. *Martin*, 19 Ohio St.3d at 129.

**{¶30}** Adams' second assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED WHEN THEY ORDERED RESTITUTION WITHOUT ESTABLISHING THE ACTUAL FINANCIAL LOSS TO THE VICTIM.**

**{¶31}** In her third assignment of error, Adams argues that the trial court erred by ordering restitution without establishing the actual financial loss to the victim. Specifically, Adams argues that there was not competent, credible evidence as to the value of the stolen items from which the trial court could determine restitution to a "reasonable degree of certainty." Adams argues that the record contains a plethora of estimates that range in degree, and that several of the semi truck rims were damaged to the extent that they should have only been valued as scrap metal.

**{¶32}** R.C. 2929.18(A)(1) provides, in relevant part:

**If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the**

**victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.**

{¶33} This Court reviews a trial court's decision to impose restitution under an abuse of discretion standard of review. *State v. Griffus*, 3d Dist. No. 14-08-39, 2009-Ohio-304, ¶7, citing *State v. Lamere,* 3d Dist. No. 1-07-11, 2007-Ohio-4930, ¶¶6-7. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. Under this standard of review, an appellate court may not simply substitute its judgment for that of the trial court. Id. "However, the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶20, citations omitted.

{¶34} That being said, Adams failed to object to the trial court's award of restitution so she has waived all but plain error on appeal. *State v. Miller*, 3d Dist. No. 1-09-32, 2009-Ohio-6157, ¶5, citing *State v. Stewart*, 3d Dist. No. 16-08-11, 2008-Ohio-5823; *State v. Marbury* (1995), 104 Ohio App.3d 179, 181, 661 N.E.2d 271. Here the trial court ordered that Adams pay $1,729.47 in restitution, which

figure was taken directly from the presentence investigation (PSI) report. (PSI). R.C. 2929.18(A)(1) specifically lists the "presentence investigation report" as one of the sources from which the trial court may determine the amount of restitution. Accordingly, we cannot find plain error with regard to the trial court's restitution order. *State v. Granderson*, 177 Ohio App.3d 424, 2008-Ohio-3757, 894 N.E.2d 1290, ¶97 (trial court's order of restitution based on PSI is not plain error).

**{¶35}** We need not address Adams' further argument that the record contained insufficient evidence that the value of the stolen property was over five hundred dollars ($500) but less than five thousand dollars ($5,000) for purposes of R.C. 2913.51(C) since we have already found sufficient evidence on this element in our discussion of Adams' first assignment of error.

**{¶36}** Adams' third assignment of error is, therefore, overruled.

**{¶37}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**