[Cite as *State v. Rogan*, 2024-Ohio-1334.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 2-23-01

    v.

TYRELL MICHAEL ROGAN,

    O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Auglaize County Common Pleas Court
Trial Court No. 2022-CR-46**

**Judgment Affirmed**

**Date of Decision:  April 9, 2024**

---

**APPEARANCES:**

    *Thomas J. Lucente, Jr.* **for Appellant**

    *Laia Zink* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Tyrell Rogan ("Rogan"), appeals the December 6, 2022 judgment of sentence of the Auglaize County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On April 5, 2022, Rogan was indicted on four counts: Count One of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; Count Two of assault on a peace officer in violation of R.C. 2903.13(A), a fourth-degree felony; Count Three of obstructing official business in violation of R.C. 2921.31(A), a fifth-degree felony; and Count Four of receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony. At his initial appearance on April 6, 2022, Rogan entered not guilty pleas and was appointed trial counsel.

{¶3} On June 30, 2022, the parties appeared for a final pretrial hearing and, among other matters, addressed a letter the trial court received from Rogan requesting appointment of different trial counsel. The parties discussed Rogan's motion in detail on the record. After discussing the matter with the court, Rogan asked to withdraw his request for new trial counsel. The court permitted the request to be withdrawn.

{¶4} The next day, the parties appeared for a change-of-plea hearing, as had been discussed the day before. Pursuant to a negotiated-plea agreement, Rogan withdrew his not guilty pleas with respect to Counts Two and Three and entered

pleas of guilty. In exchange, the State recommended dismissal of the remaining counts. The trial court accepted Rogan's guilty pleas and found him guilty of assault on a peace officer and obstructing official business. The court dismissed the other two counts. Further, the trial court ordered a presentence investigation ("PSI") and modified Rogan's bond to an own recognize bond.

{¶5} However, Rogan failed to cooperate with the PSI writer and a bench warrant was issued for his arrest on August 23, 2022. On September 13, 2022, the trial court issued an additional bench warrant for his failure to appear for his scheduled sentencing hearing.

{¶6} Rogan was arrested on November 21, 2022. At the commencement of the sentencing hearing on December 5, 2022, the trial court addressed another pro se communication it received from Rogan seeking to fire his counsel. After discussing the communication on the record, Rogan withdrew the motion and elected to proceed with his appointed counsel. Then, Rogan moved for a continuance of the hearing, or, in the alternative, to withdraw his plea. The trial court denied the motions and proceeded to sentence Rogan to 18 months in prison for the assault on a police officer, a felony of the fourth degree, and 12 months in prison for the obstructing official business offense, a fifth-degree felony. Further, the trial court ordered the sentences to be served consecutively to each other. The judgment entry of sentence was filed on December 6, 2022.

{¶7} On January 11, 2023, Rogan filed a notice of appeal. He raises three assignments of error for our review. For ease of discussion, we address his assignments of error out of order.

**Third Assignment of Error**

**Defendant was denied the effective assistance of counsel as required by the Sixth Amendment to the U.S. Constitution.**

{¶8} In his third assignment of error, Rogan contends his trial counsel was ineffective because counsel "scared him into a plea deal with claims that he would not get a fair trial in Auglaize County because of his race." (Appellant's Brief at 19).

{¶9} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland at 689*. Counsel is

entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶10} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

{¶11} In support of his argument that his trial counsel was ineffective, Rogan argues that his trial counsel coerced him into taking a plea deal by suggesting that he would not receive a fair trial due to his race. After reviewing the record, we reject Rogan's argument.

{¶12} At a pretrial on June 30, 2022, the trial court addressed the letter it received from Rogan requesting that the trial court appoint him different counsel. After speaking to the trial court, Rogan stated that he wanted his trial counsel to continue to represent him and requested to withdraw his request for the appointment of new counsel. Then, the following discussion ensued:

[Rogan]: I'm going to continue.

[Trial court]: You're going to continue?

[Rogan]: Having him as [my] attorney.

[Trial court]: Okay. So then I will encourage the two (2) of you to spend enough time together to be able to figure out your decision [regarding the pending plea offer], you know, figure out where we're going and what we're going to schedule. I will ask then, and I'll note for the record, but I do have to ask a couple of questions. Mr. Rogan, did anybody threaten you or intimidate you to get you to withdraw your request?

[Rogan]: No.

[Trial court]: Okay. You're doing this * * * of your own free will?

[Rogan]: Yeah.

[Trial court]: Okay. I mean, it wouldn't be fair if somebody was being threatened over at the jail to, "Oh, you gotta do this, or do that", or even if [your trial counsel] or somebody else was threatening you, I'd want to know about that. Have you been threatened in any way?

[Rogan]: No.

[Trial court]: Okay, okay. So the Court will allow the Defense to withdraw * * * the request that he sent in the letter to get a new lawyer. And then I will ask Counsel, discuss this with each other * * *.

* * *

[Trial counsel]:      My client would like to address the Court about his concerns.

* * *

[Rogan]:      I'm just going to probably take a plea bargain because someone told my sister in court that the jury is going to be all prejudice [sic] anyway, and

[Trial court]:      Who told your sister in court?

[Trial counsel]:      Your Honor, I will tell you, I talked to his family, and told them, bluntly, that a jury in this county is going to be most likely all white, and it is a possibility that some of those jurors might hold racist biases, that is a possibility.

[Trial court]:      Well, you know, your job is to ferret those people out and kick them off the jury.

[Trial counsel]:      Absolutely, Your Honor.

[Trial court]:      Nevertheless, [counsel], you have the right to file an appropriate motion, either before trial or in the middle of trial during voir dire if, in fact, you can't seat an impartial jury.

[Trial counsel]:      Absolutely, Your Honor. If that were to take place, I would do that.

[Trial court]:      But you've got to figure out what motion to file. Mr. Rogan, I will tell you that it is my job to conduct a fair trial. Now that means that I don't always rule in your favor, that means that I don't always rule in the favor of the State. I have to call it like I see it under the rules, but it also means that one of my jobs is to ferret out bias and to try to make sure that every jury is fair and impartial. The truth is, there's no way to know everything that goes on through somebody else's mind, so we'll do our best to allow you and your

attorney, through your attorney, to ask the appropriate questions of the jurors, to ferret out if any of them hold bias or prejudice that they are aware of. Because the truth is also, sometimes we don't know what all bias is in the back of our mind that we don't really realize. So, actually, judges get training on our own bias to try to consciously become aware of the possibility of bias, and cultural bias, and that's just not race, but that's also cultural, that's also gender, and all kinds of things. So I get your concern, I understand your concern. I'll tell you, I'll do my best to make sure that a jury that's selected is fair and impartial. And you need to talk to your attorney about what your options are with respect to requests of the Court in that regard.

[Trial counsel]:     Yes, Your Honor.

[Trial court]:     Does that answer your question enough for now at least?

[Rogan]:     Yeah, I'm just, -- I'm going to take the plea bargain, cause I just don't want to take the chance.

[Trial court]:     Well, look it [sic], you're not going to take a plea bargain on the basis that somebody, like, certainly that the Court has in any way implied that well, you better take this plea deal because a jury will be biased. And certainly I won't even accept a plea to something you did not do, I want you to understand that. And I don't want you to comment on it, you talk it over with your attorney. But one of the things that your attorney knows, is that if you didn't do an offense, I won't take a plea to it. * * *

(June 30, 2022 Tr. at 10-13).

**{¶13}** The next day, Rogan withdrew his previously-entered not-guilty pleas and pled guilty pursuant to the negotiated plea agreement. The trial court ordered a PSI and scheduled the matter for sentencing. However, Rogan did not appear for sentencing and the trial court issued warrants for his arrest.

**{¶14}** Rogan was apprehended and the trial court was able to proceed with sentencing on December 5, 2022. Rogan sent a second letter to the trial court three days before his scheduled sentencing hearing seeking new counsel on the same grounds he raised previously. The court addressed this issue prior to sentencing.

[Trial court]: I will tell you that we have had trials with persons of color who have been acquitted, we have had trials of persons of color who have been convicted. And I do what I can and instruct juries accordingly, and allow voir dire, meaning the jury selection process to address those types of issues, and I took an oath concerning my obligation to administer justice fairly and impartially without respect to who the person is, meaning, whether they're rich, or poor, black, or white, no matter what. And we are constantly being educated, reeducated, to bring to our attention, being judges generally, the built-in biases that we don't even recognize sometimes. So we try to make people aware of that, and I try to be aware of that.

Nevertheless, you're here today for sentencing on this case, on something that was originally set for sentencing in September. Now, if you insist on firing your attorney to go forward today and represent yourself, I will allow that, because everyone has a constitutional right to represent themselves [sic]. Also everyone has a constitutional right to have counsel. I'm not

hearing anything that would disqualify [your trial counsel] from representing you, based upon his analysis that he provided to your family, concerning some of the factors that he was concerned about. And I'm sure that when representing someone of color that they're going to make every effort to address that, in the voir dire jury selection process, to try to ensure that the jurors are not going to allow bias or prejudice to impact their judgment. I think it would be naïve to believe that any of us is free from bias, you, me, or anybody else. The point is, are you aware of those biases, and can you set them aside and not affect your judgment on any particular matter? So the choice is yours, whether you wish to have [your current counsel] represent you here on this sentencing, or whether you wish to represent yourself. I would encourage you to make use of counsel provided to you, as I believe that he can certainly, professionally, present to the Court the mitigation that you Folks are prepared to present, but I will not force you to have an attorney that you wish to fire. But I will go forward today on sentencing, you don't get to pick your attorney, I see no reason why [your current trial counsel] should not represent you. So this is not, you know, - and you waited until Friday the 2nd [to request new trial counsel] when a sentencing * * * hearing was happening on Monday the 5th, and this matter was rescheduled upon your arrest on November 22nd. So it's your choice, do you wish to have [your current trial counsel] represent you for the sentencing hearing today or not?

[Rogan]: I mean, I'm already here, I might as well.

(Dec. 5, 2022 Tr. at 6-8).

{¶15} Although Rogan argues that his trial counsel coerced him into accepting a plea agreement by claiming he would not receive a fair trial because of his race, the record does not support his claim. Rather, the record indicates that Rogan's trial counsel, as part of a broader conversation and analysis regarding the strength of the State's case and the decision of whether to accept a plea offer or take the matter to trial, discussed the demographics of the local community and acknowledged the possibility that a member of the jury may have some biased or prejudiced beliefs. However, it is also clear from the record that his trial counsel was aware of the processes to select an impartial jury to ensure his client received a fair trial and was prepared to make the necessary inquiries during voir dire if Rogan elected to go to trial. While trial counsel's statements may have been part of Rogan's analysis when deciding whether to accept a plea offer or go to trial, the record does not support Rogan's claim that his trial counsel "coerced" him into accepting a plea offer rather than going to trial. Furthermore, Rogan's concerns were discussed on two separate occasions, and both times Rogan elected to continue with the representation. Moreover, we note that trial counsel was successful in getting the State to dismiss the most serious charge of felonious assault, a second-degree felony, as well as fourth-degree felony receiving stolen property.

{¶16} Accordingly, we do not find that Rogan received ineffective assistance from his trial counsel. His third assignment of error is overruled.

## First Assignment of Error

**The trial court abused its discretion in denying appellant's motion to withdraw his guilty plea.**

{¶17} In his first assignment of error, Rogan argues that the trial court abused its discretion by denying his motion to withdraw his guilty plea.

{¶18} "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus. "Therefore, appellate review of a trial court's decision to deny a presentence motion to withdraw a guilty plea is limited to whether the trial court abused its discretion." *State v. Keehn*, 3d Dist. Henry No. 7-14-05, 2014-Ohio-3872, ¶ 14. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980). "When applying this standard, a reviewing court may not simply substitute its judgment for that of the trial court." *Keehn* at ¶ 14, citing *State v. Adams*, 3d Dist. Defiance No. 4-09-16, 2009-Ohio-6863, ¶ 33.

{¶19} A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which provides:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

Although "a presentence motion to withdraw a guilty plea should be freely and liberally granted[,] * * * a defendant does not have an absolute right to withdraw a plea prior to sentencing. *Xie* at 527.

{¶20} "A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

> When reviewing a trial court's denial of a presentence motion to withdraw a guilty plea, this court considers several factors, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges.

*State v. Liles*, 3d Dist. Allen No. 1-18-69, 2019-Ohio-3029, ¶ 11. "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case." *State v. North*, 3d Dist. Logan No. 8-14-18, 2015-Ohio-720, ¶ 16.

{¶21} Rogan argues that, contrary to the trial court's conclusion, the above-listed factors weigh in favor of him withdrawing his guilty plea. After reviewing the record, we disagree.

{¶22} The parties arrived for sentencing on December 5, 2022. As addressed in great detail in our analysis of Rogan's third assignment of error, at the onset of

the hearing, the trial court addressed a communication it received from Rogan requesting new trial counsel. After the parties discussed Rogan's request on the record, Rogan elected to withdraw his request for new counsel and proceed with the hearing. Shortly thereafter, the trial court engaged in the following conversation with Rogan:

| [Trial court]: | Mr. Rogan, is there any reason why sentencing should not go forward? |
|---|---|
| [Rogan]: | I would like a little bit more time but. |
| [Trial court]: | But you pled guilty back in July? |
| [Rogan]: | Umm hum. |
| [Trial court]: | And we've given you a lot of time. You said you'd like to have more time, but that's not a reason, so I'm going to deny that request. Is there any other reason, other than you'd like to have more time? Sir? |
| [Rogan]: | No. |
| [Trial court]: | What's the State's positon on sentencing on this? |
| [State]: | Your Honor, the State's recommending the maximum. The Defendant has a prior criminal history. He has a pending felony case in Bellefontaine at this time, -- * * * |
| [Trial counsel]: | Your Honor, my client is inquiring about trying to take this plea bargain back. |
| [Trial court]: | You can make a motion. |

> [Trial counsel]:  Well, I would move to withdraw the formerly entered * * * [g]uily plea * * * to the two (2) charges.

(Dec. 5, 2022 Tr. at 8-9).  The trial court then explained the potential consequences Rogan could be facing by withdrawing his guilty plea, including a conviction for felonious assault, a second-degree felony.  (*Id.* at 9-11).  The trial court took a recess to allow Rogan to consult with his trial counsel on the matter.  When the trial court reconvened, the following discussion was had on the record.

> [Trial counsel]:   * * * I would first ask the Court to continue this hearing, so that my client can speak with his family before he makes a final decision.
>
> [Trial court]:  The Defendant has had ample time to discuss this matter with his family over the last several months, including the last twelve (12) days.  The Court finds the motion to continue not well taken and the same is denied.  With respect to the motion to withdraw?
>
> [Trial counsel]:  So are you claiming, why do you want to withdraw the motion?
>
> [Rogan]:  I just don't think I'm guilty.
>
> [Trial counsel]:  So you're claiming actual innocence?
>
> [Trial court]:  If you can speak up a little louder, if you intend it to come to me, I'd appreciate it.
>
> [Trial counsel]:  Yes, Your Honor, my client would wish to withdraw his guilty plea due * * * he is claiming he's actually innocent of the charges.  I think that's the only reason we can provide.

| [Trial court]: | Very well. The Court finds that the Defendant has simply had a change of heart. The Court had a previous colloquy pursuant to Criminal Rule 11, he has delayed through failing to appear, and he has continued to try to delay the sentencing hearing today. The Court finds that his request is not well taken, the same is denied. |
|---|---|

(*Id.* at 14-15). The trial court then proceeded to sentencing.

**{¶23}** When viewing the record in light of the factors set forth above, we find that the trial court did not abuse its discretion by denying Rogan's motion to withdraw his guilty plea.

**{¶24}** First, whether the State would be prejudiced by the withdrawal of the guilty pleas. Although at the time the motion was made neither party argued prejudice, it is evident that if there is prejudice, it was the result of Rogan's failure to appear and lack of cooperation with the PSI writer. Notably, the trial court had to issue two bench warrants due to Rogan's actions and lack of cooperation.

**{¶25}** Second, Rogan alleges that his trial counsel was ineffective for allegedly using a "racial threat * * * to get [Rogan] to accept a plea bargain rather than take it to trial." (Appellant's Brief at 8). We previously addressed Rogan's concerns regarding his trial counsel's representation, particularly as it relates to this specific issue, and we concluded that the record did not support Rogan's allegation that his trial counsel was ineffective. Likewise, here, we find that Rogan's contention that his trial counsel coerced him into accepting a plea agreement is not supported by the record.

-16-

{¶26} With respect to the third and eighth factors, Rogan concedes that the trial court's Crim.R. 11 colloquy was proper. Although Rogan, nonetheless, argues that he did not comprehend what was happening at the change-of-plea hearing, the record, once again, does not support this contention. Although Rogan did, at one point express confusion regarding the specifics of the process and the procedures, he was given an opportunity to address any questions to his trial counsel. Indeed, the trial court recessed for the purpose of allowing Rogan to consult his trial counsel. When the parties returned on the record, Rogan indicated that his trial counsel answered his questions and that he was prepared to proceed.

{¶27} Regarding the fourth and fifth factors, although the court did not postpone sentencing in order to conduct a separate hearing on this motion, the record indicates that the trial court, nonetheless, gave the motion full and fair consideration. The trial court gave Rogan and his trial counsel the opportunity to be heard on the motion. However, given the history of the case and the context of the motion, the trial court was able to ascertain very quickly that Rogan's motion to withdraw his guilty plea, after his motion to continue and his motion for new counsel were both denied, was a thinly-veiled delay tactic.

{¶28} Next, the sixth factor, regarding the reasonableness of the timing of the motion, decidedly weighs against Rogan. The oral motion was made at the sentencing hearing, which had itself been delayed for several months through Rogan's failure to appear and lack of cooperation with the PSI writer. At no time

in the more than five months that elapsed since the change-of-plea hearing did Rogan request to withdraw his plea or assert his innocence.

{¶29} Finally, with respect to the seventh and ninth factors, Rogan did assert a claim of actual innocence. However, the verity of the claim is severely undermined by the timing of the request—with the request being made at the eleventh hour and directly after the denial of his motion for a continuance. In the words of his trial counsel, the basis of the claim was actual innocence because that was the only option available to him. (Dec. 5, 2022 Tr. at 14-15).

{¶30} After reviewing all the applicable factors, we conclude that the trial court did not err by denying Rogan's motion to withdraw his guilty plea. Rogan's first assignment of error is overruled.

## Second Assignment of Error

**The trial court erred when it sentenced defendant to prison and ran the terms consecutive to each other.**

{¶31} In his second assignment of error, Rogan argues that the trial court erred by imposing consecutive sentences because the consecutive sentences are not supported by the record. For the reasons that follow, we disagree.

### *Standard of Review*

{¶32} Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Relevant Authority*

**{¶33}** In his assignment of error, Rogan argues that the trial court erred by imposing consecutive sentences. "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides:

> (4) * * * [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of

the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶34}** R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record when imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*

**{¶35}** The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

*Analysis*

**{¶36}** Rogan does not argue that the trial court failed to make the requisite consecutive-sentencing findings under R.C. 2929.14(C)(4). Rather, he contends that the record does not support the trial court's findings.

At the sentencing hearing, the trial court stated:

> The two (2) offenses that were committed as part of one (1) course of conduct, which I agree with Counsel, that it was one continuing course of conduct, but the harm caused was so great or unusual that no single prison term, for any of the offenses committed as part of any of the courses of conduct, adequately reflects the seriousness of the offender's conduct, and he's shown this pattern in the past. And that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. The Court finds that consecutive service is necessary to protect the public from future crime and to punish the offender, and consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and the danger the offender poses to the public.

(Dec. 5, 2022 Tr. at 23). The court memorialized those findings in its sentencing entry. (Doc. No. 61). Accordingly, the record reflects that the trial court made the appropriate R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry.

**{¶37}** Rogan concedes that the trial court made the required findings pursuant to R.C. 2929.14(C)(4) prior to imposing the consecutive sentences. Nevertheless, Rogan contends the consecutive-sentencing findings are not supported by the record. In support of his argument, Rogan summarily argues that "the record does not show that [his] conduct was so great or unusual" as to merit

-21-

consecutive sentences. (Appellant's Brief at 18). "'[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal.'" *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 86, quoting *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. If an argument exists that can support an assignment of error, it is not this court's duty to root it out. *State v. Shanklin*, 3d Dist. Union No. 14-13-23, 2014-Ohio-5624, ¶ 31.

{¶38} Moreover, the record does support the trial court's finding that the harm caused was so great or unusual to have merited consecutive sentences. The record indicates that Rogan intentionally released several large dogs on officers who arrived at his location to arrest him. During the ensuing pursuit, one of the officers fell and broke a bone in his wrist on his dominant hand. The officer's victim impact statement indicated that he now hesitates when confronted with situations involving large dogs. Additionally, the officer noted continuing pain in his wrist, which, at the time of sentencing, still caused him pain and made it difficult for him to remain physically fit, as required for his employment. Furthermore, Rogan's criminal history included a prior conviction for resisting arrest. Accordingly, we find that the record supports the trial court's consecutive-sentencing findings.

{¶39} Further, to the extent that Rogan suggests that the trial court did not conduct a proportionality analysis, we note that in *State v. Gwynne*, ____ Ohio St.3d _____, 2023-Ohio-3851, which was decided while Rogan's case was pending, the Supreme Court of Ohio reiterated that "[a]ppellate review turns on whether the trial

court's findings are clearly and convincingly not supported by the record, and if the evidence supports the trial court's consecutive-sentence findings, the analysis ends there." *Id.* at ¶ 24.

{¶40} Accordingly, Rogan's second assignment of error is overruled.

*Conclusion*

{¶41} For the foregoing reasons, Rogan's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Auglaize County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**